### HUNTER v. UNITED STATES.

(Circuit Court of Appeals, Second Circuit. November 21, 1904.)

#### No. 30.

1. CUSTOMS DUTIES—CLASSIFICATION—ENVELOPES—MANUFACTURES OF PAPER.
   Pieces of paper which have been cut into shapes and sizes adapting them to be folded so as to constitute envelopes, but which are not shown to have been commercially known as envelopes at and prior to the time of the passage of the tariff act of July 24, 1897, c. 11, 30 Stat. 151 [U. S. Comp. St. 1901, p. 1626], are not dutiable as "paper envelopes," under paragraph 399, Schedule M, § 1, of said act, 30 Stat. 188 [U. S. Comp. St. 1901, p. 1672], but as manufactures of paper, under paragraph 407, 30 Stat. 189 [U. S. Comp. St. 1901, p. 1673].

Appeal from the Circuit Court of the United States for the Southern District of New York.

This cause comes here upon appeal from a decision of the Circuit Court, Southern District of New York (126 Fed. 894), affirming a decision of the Board of General Appraisers (G. A. 4,768, T. D. 22,497), which sustained the collector of the port of New York as to the rate of duty on certain merchandise imported under the tariff act July 24, 1897, c. 11, 30 Stat. 151 [U. S. Comp. St. 1901, p. 1626].

W. W. Smith, for appellant.

D. Frank Lloyd, for the United States.

Before LACOMBE, TOWNSEND, and COXE, Circuit Judges.

LACOMBE, Circuit Judge. The articles in question might appropriately be described as "envelope blanks." They consist of pieces of paper which have been cut by machinery into certain appropriate shapes and sizes, which adapt them to be folded so as to constitute envelopes of desired shapes and sizes. They were assessed for duty under paragraph 407, Act July 24, 1897, c. 11, Schedule M, § 1, 30 Stat. 189 [U. S. Comp. St. 1901, p. 1673], as "manufactures of paper, or of which paper is the material of chief value, not specially provided for in this act." It is not disputed that they are manufactures of paper; the only question in the case being whether they have been manufactured into the articles provided for in paragraph 399 (30 Stat. 188 [U. S. Comp. St. 1901, p. 1672]), which reads as follows:

"399. Paper envelopes, plain, twenty per centum ad valorem; if embossed, printed, tinted or decorated, 35 per centum ad valorem."

The Standard Dictionary defines "envelope" as "a case or wrapper, usually of paper, with gummed edges for sealing, in which a letter or like may be sent through the mail or inclosed for any purpose." Manifestly the paper blank is not within this definition. A second and broader definition is also given: "Any inclosing integument or covering. A wrapper." Broad though this is—and it is comprehensive enough to cover a pea pod or a chestnut burr—it would not include a mere piece of cloth, paper, or what not, however convenient its shape and size, until it was actually put to use as a wrapper, thus becoming an "inclosing" integument or covering. In common everyday speech, the word "envelope" is used as implying the actual case or wrapper, of paper or cloth, in which a letter or the like may be inclosed. The "blanks" here imported have not yet become such case or wrapper, even though they may be of such shape and size as to unfit them for other purposes. It is still necessary to fold over the flaps, and to apply gum to the edges of some of them, and actually to stick together the side and bottom flaps. These are substantial steps in the process of manufacture—manifestly more substantial than was the mere act of cutting the individual veil from the roll of veils in Oppenheimer v. United States, 66 Fed. 52, 13 C. C. A. 327, on which appellant relies. Nor is appellant's contention sustained by Isaacs v. Jonas, 148 U. S. 648, 13 Sup. Ct. 677, 37 L. Ed. 596, in which packages of cigarette papers, and the paper covers therefor, imported separately with the intention of pasting them together after they were withdrawn and before selling, were held dutiable as "smoker's articles." It was said by the court that:

"The mere pasting together of the papers and the covers was in no proper sense a process of manufacture, and did not change the use or the character of the articles."

But that language is to be interpreted in the light of the facts in the case then under consideration. It was held that:

"The leaves of paper were fit for nothing else but to be made into cigarettes, and smoked with the tobacco wrapped in them; and they were used in the same way, whether never put into a cover at all, or first pasted into a cover, and afterwards torn out one by one. The covers were fit for nothing except to hold and protect the papers until made by the smoker into cigarettes."

Evidently the court was of the opinion that packages and covers were equally "smoker's articles," and therefore held that their character was not changed by merely pasting them together.

There remains the question of commercial designation. The Board of General Appraisers found that "the merchandise is known as 'flat envelopes,' but have to be folded and gummed to make them the envelope of commerce." The testimony of the single witness who testified does not bear out this finding. He said that in trade there were two kinds of envelopes (flat envelopes, such as the importation, and folded envelopes, of which he produced a sample), and that, in ordering those goods or in describing them, no other term is used except the term "envelopes" (flat envelopes or folded envelopes, as the case may be). There is no testimony in the case upon which any finding of trade designation can be made. The witness properly qualified himself by stating that he had been engaged in the paper business since 1883, but he was

asked only as to present meanings of the terms used in that trade. No question was put tending to elicit whether there was any special trade meaning of the word "envelopes" at and immediately prior to the passage of the act of 1897.

The decision of the Circuit Court is affirmed.